UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: _____

LINDA D'AMBRA, as Personal Representative
for the Estate of Joseph D'Ambra, deceased,

      Plaintiff,

v.

CARNIVAL CORPORATION, and
MUHAMMAD RAUF,

      Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff sues Defendants and alleges:

### PRELIMINARY ALLEGATIONS

1. Plaintiff, LINDA D'AMBRA, is a United States citizen and citizen and resident of Texas. Plaintiff brings this action on behalf of her husband, Joseph D'Ambra (deceased, hereinafter the "Decedent") as his Estate's Personal Representative, and on behalf of his children, beneficiaries and heirs. When alive, Joseph D'Ambra was also a United States citizen and citizen and resident of Texas.

2. Plaintiff brings this action to recover all damages permitted by law arising from the Decedent's death; including, but not limited to, the Decedent's pre-death pain and suffering, the mental pain and suffering, loss of guidance, loss of services, and loss of consortium suffered by the Decedent's family caused by the Decedent's death, and medical expenses incurred by the Decedent's injuries and death.

3. Defendant, CARNIVAL CORPORATION (hereinafter "Defendant" or

1

"Carnival"), is a foreign entity incorporated under the laws of Panama, headquartered in Florida.

4.     Defendant, MUHAMMAD RAUF, is a medical doctor who worked aboard Carnival's cruise vessel, who, upon information and belief, is a non-U.S. national.

5.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the Parties are completely diverse and the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332. In the alternative, if diversity jurisdiction does not apply, then this matter falls under the Court's admiralty jurisdiction.

6.     At all times material hereto, Defendants, personally or through an agent:

    a.  Operated, conducted, engaged in or carried out a business venture in this state and/or county or had an office or agency in this state and/or county;

    b.  Was engaged in substantial business activity within this state;

    c.  Operated vessels in the waters of this state;

    d.  Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

    e.  Committed acts set out in this Complaint that occurred in whole or in part in this county and/or state; and/or

    f.  Issued a cruise line ticket to the Plaintiff that required that suit be brought in this Court against the named Defendant in this action.

7.     At all times material hereto, Defendants are subject to the jurisdiction of the Courts of this State.

8.     The causes of action asserted in this Complaint arise under the General Maritime Law of the United States. Notwithstanding the application of General Maritime Law and, pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a jury trial on all claims asserted herein.

**TRIP AND FALL INCIDENT**

9.      At all times material hereto, Carnival owned, operated, managed, maintained and/or controlled the subject vessel, the *Carnival Dream.*

10.      At all times material, Carnival operated the *Carnival Dream* in navigable waters.

11.      Carnival, as a common carrier, was engaged in the business of providing to the public, and to the Decedent in particular, for compensation, vacation cruises aboard the vessel, the *Carnival Dream.*

12.      At all times material, the Decedent was a paying passenger and lawfully aboard the *Carnival Dream.*

13.      On or about February 12, 2024, the Decedent sustained severe bodily injuries when he tripped over a chaise lounge chair that was not put in its proper place and/or not properly aligned with the surrounding other chaise lounge chairs on or about Deck 10 of the subject vessel (hereinafter referred to as the "subject area"). This incident occurred while the vessel was in Key West, Florida and within Florida waters.

14.      As a result of the subject incident, Plaintiff severely injured his face and head.

15.      The subject area constituted a dangerous condition for reasons that include, but were not limited to:

   a. The subject area contained a chaise lounge chair that was not put in its proper place and/or not properly aligned with the surrounding other chaise lounge chairs, thus the lounge chair created a trip hazard;

   b. The Deck 10 subject area did not provide clear access for passengers to walk safely, as the lounge chair was out of place and/or not properly aligned with the surrounding lounge chairs;

   c. Carnival negligently maintained the vessel and its walkways, because the lounge chair narrowed and protruded onto a pedestrian walkway; and/or

   d. The trip hazard was not open nor obvious to the Plaintiff.

16. Prior to the subject incident, Defendant knew and/or should have known of the dangerous condition(s) outlined above for reasons that include, but were not limited to:

   a. At the time of the Decedent's incident, Carnival had a corrective policy in place to prevent accidents exactly like the one the Decedent experienced, in that Carnival's corrective action policy required that "[s]unbeds or sun loungers must be arranged on deck ensuring clear access to minimize trip and fall hazards". Carnival required its crewmembers to understand this policy and execute on it, to prevent the accident that befell the Decedent.

   b. Prior to the Decedent's incident, other passengers of Defendant's cruise vessels also slipped and fell while on the subject vessel and same deck, a sister ship on a similar deck, or a similar ship on a similar deck:

      i. In March 2015, a passenger tripped on a lounge chair on Deck 11 of the *Carnival Pride*. *See Carroll v. Carnival Corp.,* 955 F.3d 1260, 1262 (11th Cir. 2020). This prior incident is similar in that Defendant's guest tripped due to the same or similar dangerous conditions as the Decedent; thus, putting Defendant on notice that the manner in which it carelessly left the lounge chair on the open deck was dangerous.

   c. In *Carroll v. Carnival Corp.,* 955 F.3d 1260, 1262 (11th Cir. 2020), and opinion issued by the Eleventh Circuit Court of Appeals on April 15, 2020, the Court identified Defendant, Carnival's policy that: i) Carnival required all lounge chairs on open deck areas to be set up in the upright position, and employees regularly patrolled the area to fix the chairs so that they would not be a trip hazard; and ii) the lounge chairs on Carnival ship open decks were supposed to be arranged in the upright position, and crew were instructed and trained to make sure that the chairs were not protruding into or blocking the walkway; and noted Carnival's understanding that "[i]f the lounge chair is set on the passenger walkway, it would be an obstruction[ ], it's a reason why a person can get injured." *See Carroll v. Carnival Corp.,* 955 F.3d 1260 at 1266 (11th Cir. 2020).

**SHIPBOARD MEDICAL INCIDENT**

17.    At all times material hereto, Carnival owned, operated, managed, maintained and/or controlled the subject vessel, the *Carnival Dream* (hereinafter the "vessel"), upon which the Decedent was injured.

18.    At all times material, Carnival operated the vessel in navigable waters.

19.    At all times material hereto, Carnival created, owned, managed and/or operated the medical facility aboard the vessel.

20.    At all times material hereto, Carnival owned, operated, controlled, managed, and/or maintained the medical equipment in the medical facility aboard the vessel.

21.    At all times material hereto, Carnival maintained, controlled, ordered and/or supplied the medicine and/or medical equipment, including diagnostic equipment, for the medical facility aboard the vessel.

22.    At all times material hereto, Carnival staffed the medical facility aboard the vessel with a doctor(s) and/or a nurse(s). At all times material, the doctor(s) and nurse(s) aboard the vessel were full-time employees of Carnival, subject to Carnival's control, as Carnival controlled the day-to-day activities of the shipboard doctor(s) and nurse(s) aboard the vessel (hereinafter collectively referred to as the "Medical Personnel").

23.    At all times material hereto, Carnival had control and/or the right to control any and all members of the Medical Personnel working in Carnival's medical facility aboard the vessel, including the medical doctors, nurses and other medical personnel.

24.    At all material times, Carnival hired, retained, and/or had the right and ability to fire members of the Medical Personnel it carried aboard the vessel.

25.     At all times material hereto, the members of Carnival's Medical Personnel were in the regular, full-time employment of the vessel, as salaried members of the crew, subject to the vessel's discipline and the master's orders, and also under the control of Carnival's shoreside medical department located in Miami, Florida, through modern means of communication such as "Face-to-Face Telemedicine."

26.     At all times material hereto, the Medical Personnel were employees, actual agents, apparent agents, and/or joint venturers of Carnival, and at all times material hereto, acted within the course and scope of their employment, agency, and/or joint venture relationship.

27.     At all material times, Carnival was responsible for, and liable for, the actions of the Medical Personnel with respect to treatment, or lack of treatment, of the Decedent, based on theories of *respondeat superior*, apparent agency and/or joint venture.

28.     At no time did Carnival represent to Plaintiff or the Decedent in particular, or to the vessel's passengers in general, in a meaningful way, that the Medical Personnel were not agents or employees of Carnival, and/or that they were independent contractors.

29.     Following the Decedent's trip and fall incident, outlined in more detail above, the Decedent presented to Carnival's shipboard medical center. At all times material relative to the Decedent and his interactions with Defendant's shipboard Medical Personnel, including Defendant, MUHAMMAD RAUF, the subject vessel was in Key West, Florida and within Florida state territorial waters.

30.     At Carnival's shipboard medical center, Defendant, MUHAMMAD RAUF examined the Decedent, was advised that the Decedent recently sustained a head injury and was on blood thinners, and Defendant, MUHAMMAD RAUF, observed Plaintiff sleeping and/or becoming unconscious in the medical center. The Decedent remained in the medical center in this

condition for approximately two (2) hours, and during that time, neither Carnival's Medical Personnel nor Defendant, MUHAMMAD RAUF arranged the Decedent's medical disembarkation from the vessel so that he could receive treatment with shoreside medical specialists. Instead, Defendant, MUHAMMAD RAUF discharged the Decedent from the medical center and advised him to rest in his cabin.

31. Carnival's Medical Personnel and Defendant, MUHAMMAD RAUF delayed in providing the Decedent proper medical care; and the medical care they did provide fell below the standard of care for cruise ship medicine, as the Decedent had an obvious head injury and was on blood thinners, such that the Medical Personnel knew or should have known the Decedent was then dealing with an emergency medical condition that required emergency shoreside medical care.

32. Less than two hours after the Decedent was discharged from the shipboard medical facility, the Decedent began to vomit and was taken back to the vessel's medical center. Following the Decedent's second visit to the medical center, Carnival's Medical Personnel makes a request to Carnival's shipboard and shoreside operation teams to medically evacuate the Decedent from the vessel.

33. The Decedent died two days later, on February 14, 2024, and his cause of death following autopsy was declared to be blunt force injury to his head.

34. The negligent conduct on the part of Carnival, its employees, agents, the shipboard Medical Personnel, including Defendant, MUHAMMAD RAUF, and Carnival's shoreside Medical Department include, but are not limited to:

    a. Carnival's shipboard Medical Personnel failed to timely assess the Decedent's shipboard medical condition and/or treat it as a medical emergency.

    b. Carnival's shipboard Medical Personnel failed to timely arrange the Decedent's

emergency evacuation from the vessel, including, but not limited to an unreasonable delay in alerting the U.S. Coast Guard and/or local emergency services as to the Decedent's medical condition.

c.  Carnival's shipboard Medical Personnel failed to timely inform the vessel's Captain as to the Decedent's emergency medication condition.

d.  Carnival's shipboard Medical Personnel failed to provide the Decedent with prompt and/or proper shipboard medical care, including but not limited to the provision of appropriate medications available shipboard to treat his head injury.

e.  Carnival, its shipboard Captain, shipboard Medical Personnel, and shoreside Medical Department failed to adequately staff the vessel with sufficient medical personnel and/or sufficient medical supplies, diagnostic equipment, including mobile CT Scanner and/or medication.

f.  Carnival, its shipboard Captain, shipboard Medical Personnel, and shoreside Medical Department, failed to timely arrange an emergency medical response to the Decedent's emergency medical condition.

35.  The negligent conduct on the part of Carnival, its employees, agents, the shipboard Medical Personnel, including Defendant, MUHAMMAD RAUF, and Carnival's shoreside Medical Department, all occurred when the vessel was within Key West, Florida and within Florida state territorial waters.

36.  As a direct result of the foregoing facts, the Decedent did not receive prompt nor proper medical care for his head injury, he suffered additional physical pain and mental anguish, and he ultimately died.

## COUNT I – NEGLIGENT FAILURE TO MAINTAIN
### (Trip and fall incident)

The Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixteen (16) above as though alleged originally herein and further alleges:

37.    At all times material hereto, it was the duty of Defendant to provide the Decedent with reasonable care under the circumstances, which included a duty to reasonably maintain the subject area in a reasonably safe condition.

38.    On or about February 12, 2024, Defendant and/or its agents, employees and/or crewmembers breached its duty to provide the Decedent with reasonable care under the circumstances, through negligent acts and/or omissions that include, but were not limited to:

a.  Failure to reasonably maintain the Deck 11 walkway to ensure the lounge chair did not narrow or protrude onto the pedestrian walkway; and/or

b.  Failure to adequately and/or regularly maintain the subject area to keep it free of trip hazards; and/or

c.  Failure to adequately and/or regularly inspect the subject area further to properly maintaining it in a safe condition.

39.    As a direct and proximate result of the negligence of Defendant, the Decedent was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of the Decedent's injuries, suffered physical handicap, and died. The Decedent's family also lost the benefit of the Decedent's companionship, guidance, love and nurturing, services, and financial support, all of which damages are hereby claimed for recovery in this case.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant and demands trial by jury.

9

## COUNT II – GENERAL NEGLIGENCE
### (Trip and fall incident)

The Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixteen (16) above as though alleged originally herein and further alleges:

40. At all times material hereto, it was the duty of Defendant to provide the Decedent with reasonable care under the circumstances.

41. On or about February 12, 2024, Defendant and/or its agents, employees and/or crewmembers breached its duty to provide the Decedent with reasonable care under the circumstances, through negligent acts and/or omissions that include, but were not limited to:

   a. Failure to reasonably organize the lounge chair in a safe manner to avoid it protruding onto the passenger walkway; and/or

   b. Failure to reasonably comply with Carnival's own policy and/or procedure to have walkways be free of trip hazards and/or organize the lounge chairs; and/or

   c. Failure to correct hazardous conditions following other and prior trip and fall accidents on the same area, same deck and/or same flooring surface.

42. As a direct and proximate result of the negligence of Defendant, the Decedent was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of the Decedent's injuries, suffered physical handicap, and died. The Decedent's family also lost the benefit of the Decedent's companionship, guidance, love and nurturing, services, and financial support, all of which damages are hereby claimed for recovery in this case.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant and demands trial by jury.

### COUNT III – NEGLIGENT FAILURE TO WARN
### (Trip and fall incident)

The Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixteen (16) above as though alleged originally herein and further alleges:

43.     At all times material hereto, it was the duty of Defendant to provide the Plaintiff with reasonable care under the circumstances.

44.     At all times material hereto, it was the duty of Defendant to warn passengers of dangers that were known, or reasonably should have been known, to Defendant in places where passengers are invited to or may reasonably be expected to visit.

45.     On or about February 12, 2024, the Decedent was on or about Deck 11 of the subject vessel, which is a place that the Decedent was invited to by Defendant and a place Defendant reasonably expected the Decedent to be in during the subject cruise.

46.     On or about February 12, 2024, Defendant and/or its agents, employees and/or crewmembers breached its duty to warn the Decedent of the dangerous conditions outlined above through negligent acts and/or omissions that include, but were not limited to:

a.  Failure to sufficiently warn the Decedent that the lounge chair would narrow onto and/or protrude on the passenger walkway; and/or

b.  Failure to sufficiently warn the Decedent that Defendant's crew did not comply with Defendant's policy or procedure pertaining to the safe maintenance of the walkway;  and/or

c.  Failure to sufficiently warn passengers and the Plaintiff of other trip and fall accidents which previously occurred in the same area, on same deck and/or on same flooring surface as Plaintiff's incident.

47.     As a direct and proximate result of the negligence of Defendant, the Decedent was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom,

11

incurred medical expenses in the care and treatment of the Decedent's injuries, suffered physical handicap, and died. The Decedent's family also lost the benefit of the Decedent's companionship, guidance, love and nurturing, services, and financial support, all of which damages are hereby claimed for recovery in this case.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant and demands trial by jury.

### COUNT IV – GENERAL NEGLIGENCE AGAINST CARNIVAL
### (Medical Negligence)

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through eight (8) and seventeen (17) through thirty-six (36) above, as though alleged originally herein, and further alleges:

48.     At all times material, Carnival owed the Decedent a duty to provide reasonable care under the circumstances.

49.     On or about February 12, 2024, Carnival breached its duty to provide the Decedent reasonable care under the circumstances as follows:

a. Failing to timely assess the Decedent's medical condition;

b. Failing to timely arrange the Decedent's emergency evacuation from the vessel, including, but not limited to an unreasonable delay in alerting the U.S. Coast Guard as to the Decedent's medical condition;

c. Failing to timely inform the vessel's Captain as to the Decedent's emergency medication condition;

d. Failing to provide the Decedent with prompt and/or proper shipboard medical care, including but not limited to the provision of appropriate medications available shipboard to treat his medical condition and/or slow its progression;

e. Failing to adequately staff the vessel with sufficient medical personnel, sufficient

12

medical supplies and/or medication;

f.  Failing to timely arrange an emergency medical response to the Decedent emergency medical condition;

g.  Failing to have "Face to Face Telemedicine" tools in place and/or failure to use those tools when necessary, such as in the Decedent's case here and/or otherwise failing to have adequate procedures, policies or tools in place to ensure adequate communication between the Medical Personnel and Carnival's shoreside medical department;

h.  Failure to furnish the Decedent and/or Plaintiff such medical advice, aid and/or assistance as an ordinarily prudent person would render under similar circumstances in view of Carnival's undertaking to equip the vessel with a medical facility and medical personnel;

i.  Failing to promptly and/or adequately diagnose the Decedent's medical emergency condition;

j.  Failing to adequately treat the Decedent's medical condition as a medical emergency;

k.  Failing to utilize telephone and/or video consultations with specialists, shipboard or shoreside, during the medical care and treatment of the Decedent and/or otherwise failing to promptly have the Decedent seen by a shoreside physician and/or specialist.

50. At all times material hereto, Carnival knew of the foregoing conditions, or the conditions existed for a sufficient length of time so that Carnival, in the exercise of reasonable care under the circumstances, should have learned of them.  This knowledge was or should have been acquired through prior incidents involving Carnival's ship's doctors and/or nurses whom provided improper medical advice and/or treatment to passengers aboard CARNIVAL's vessels. *See, e.g., Murphy v. Carnival Corp.*, Case No. 19-cv-21450-RNS (S.D. Fla. 2019); *Gharfeh v. Carnival Corp.*, 309 F. Supp. 3d 1317, 1327 (S.D. Fla. 2018); *Rinker v. Carnival Corp.*, Case No. 09-23154-CIV (S.D. Fla. 2010).

51. Carnival's negligent acts and omissions caused the Decedent's death.

52.     As a direct and proximate result of the negligence of Defendant, the Decedent was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of the Decedent's injuries, suffered physical handicap, and died. the Decedent's family also lost the benefit of the Decedent's companionship, guidance, love and nurturing, services, and financial support, all of which damages are hereby claimed for recovery in this case.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant and demands trial by jury.

### COUNT V – NEGLIGENT FAILURE TO WARN AGAINST CARNIVAL
### (Medical negligence)

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through eight (8) and seventeen (17) through thirty-six (36) above, as though alleged originally herein, and further alleges:

53. At all times material, Carnival owed the Decedent a duty to exercise reasonable care under the circumstances.

54. Further, and as part of the above mentioned duty, at all times material Carnival owed the Decedent a duty to warn of dangers that were known, or reasonably should have been known, to Carnival in places where passengers like Plaintiff and the Decedent were invited or were reasonably be expected to visit, including, but not limited to, in the ship's medical facility and/or as it pertains to the medical services Carnival offered and/or provided to passengers like The Decedent aboard same.

55. On or about February 12, 2024, Carnival breached its duty to provide the Decedent

14

with reasonable care under the circumstances, including the duty to warn, and the Decedent was thereby injured due to the fault and negligence of Carnival as follows:

a. Failure to reasonable warn passengers, including Plaintiff and the Decedent, that Carnival was unable to timely arrange passengers' emergency evacuation from the vessel and/or Carnival would delay doing so;

b. Failure to reasonably warn passengers, including Plaintiff and the Decedent, that Carnival was unable to provide passengers prompt and/or proper shipboard medical care;

c. Failure to warn passengers, including Plaintiff and the Decedent, that Carnival did not employ an adequate number of Medical Personnel aboard the vessel to handle medical emergencies, in light of Carnival's undertaking of a duty to man the vessel with a medical facility and Medical Personnel; and/or

d. Failure to warn passengers, including Plaintiff and the Decedent, that Carnival did not have adequate procedures, policies or tools in place to ensure adequate communication between the Medical Personnel shipboard and Carnival's shoreside medical department, in order to ensure a proper and/or more reliable diagnosis of emergency medical conditions.

56. At all times material hereto, Carnival knew of the foregoing conditions, or the conditions existed for a sufficient length of time so that Carnival, in the exercise of reasonable care under the circumstances, should have learned of them. This knowledge was or should have been acquired through prior incidents involving Carnival's ship's doctors and/or nurses whom provided improper medical advice and/or treatment to passengers aboard Carnival's vessels. *See, e.g., Murphy v. Carnival Corp.*, Case No. 19-cv-21450-RNS (S.D. Fla. 2019); *Gharfeh v. Carnival Corp.*, 309 F. Supp. 3d 1317, 1327 (S.D. Fla. 2018); *Rinker v. Carnival Corp.*, Case No. 09-23154-CIV (S.D. Fla. 2010).

57. As a direct and proximate result of the negligence of Defendant, the Decedent was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom,

incurred medical expenses in the care and treatment of the Decedent's injuries, suffered physical handicap, and died. The Decedent's family also lost the benefit of the Decedent's companionship, guidance, love and nurturing, services, and financial support, all of which damages are hereby claimed for recovery in this case.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant and demands trial by jury.

### COUNT VI – NEGLIGENCE AGAINST CARNIVAL FOR THE NEGLIGENT CONDUCT OF THE MEDICAL PERSONNEL BASED ON A THEORY OF VICARIOUS LIABILITY UNDER *RESPONDEAT SUPERIOR*

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through eight (8) and seventeen (17) through thirty-six (36) above, as though alleged originally herein, and further alleges:

58. At all times material hereto, the Medical Personnel were the ship's doctors and nurses aboard the vessel.

59. At all times material hereto, the Medical Personnel were agents, servants and/or employees of Carnival.

60. At all times material hereto, the Medical Personnel were acting within the scope of their employment and/or agency with Carnival.

61. At all times material hereto, Carnival acknowledged that the Medical Personnel would act on Carnival's behalf, and the Medical Personnel accepted the undertaking, based on the following:

    a. The Medical Personnel worked in the medical facility, which was created, owned and/or operated by Carnival.

    b. Carnival's logo and insignias were displayed in various places throughout the medical facility.

16

c. Carnival's website publicly described the medical facility in proprietary language, including, but not limited to, "<u>our</u> medical centers…"

d. Carnival billed and collected payments directly from passengers for the medical services provided by the Medical Personnel, and Carnival did so through passengers' onboard accounts with Carnival.

e. The Medical Personnel were employed full-time by Carnival.

f. The Medical Personnel were paid a salary by Carnival.

g. The Medical Personnel wore uniforms and/or nametags, which were provided by Carnival and had Carnival's name and logo.

h. The Medical Personnel referred to themselves as crewmembers, and Carnival referred to the Ship's Doctors and Ship's Nurses as ship's officers.

i. The Medical Personnel were under the commands of the ship's officers and followed all of the master's rules and regulations.

j. The Medical Personnel spoke to Plaintiff as though they had authority by Carnival to render medical treatment to Plaintiff and on Carnival's behalf.

62. At all times material hereto, the Medical Personnel were subject to the control and/or right to control by Carnival, based on the allegations set forth in the preceding paragraph, along with the following:

a. The Medical Personnel were employed full-time by Carnival, paid a salary by Carnival, and worked in the medical facility aboard the vessel which at all times material was created, owned maintained and/or operated by Carnival.

b. Carnival stocked and equipped the medical facility, and as such, the equipment (including diagnostic) and medications necessary for the Medical Personnel to perform their work was furnished by Carnival.

c. The Medical Personnel were subject to Carnival's training requirements and were under the commands of Carnival's ship's officers and the master's rules and regulations.

d. Carnival maintained control over the day-to-day operations and/or duties of the Medical Personnel.

e. Carnival had the right to fire the Medical Personnel.

17

63. At all times material hereto, Carnival had a duty to provide the Decedent with reasonable care under the circumstances.

64. At all times material hereto, the Medical Personnel owed a duty to provide the Decedent with reasonable care under the circumstances.

65. At all times material hereto, Carnival, through the acts/omissions of the Medical Personnel, breached their duty to provide reasonable care under the circumstances to The Decedent through the following acts and/or omissions:

a. Failing to timely assess the Decedent's medical condition;

b. Failing to timely arrange the Decedent's emergency evacuation from the vessel, including, but not limited to unreasonably delay in alerting the U.S. Coast Guard as to the Decedent's medical condition;

c. Failing to timely inform the vessel's Captain as to the Decedent's emergency medication condition;

d. Failing to provide the Decedent with prompt and/or proper shipboard medical care, including but not limited to the provision of appropriate medications available shipboard to treat his medical condition and/or slow its progression;

e. Failing to timely arrange an emergency medical response to the Decedent's emergency medical condition;

f. Failing to have "Face to Face Telemedicine" tools in place and/or failure to use those tools when necessary, such as in The Decedent's case here and/or otherwise failing to have adequate procedures, policies or tools in place to ensure adequate communication between the Medical Personnel and Carnival's shoreside medical department;

g. Failure to furnish the Decedent and/or Plaintiff such medical advice, aid and/or assistance as an ordinarily prudent person would render under similar circumstances in view of Carnival's undertaking to equip the vessel with a medical facility and medical personnel;

h. Failing to utilize telephone and/or video consultations with specialists, shipboard or shoreside, during the medical care and treatment of the Decedent and/or otherwise failing to promptly have the Decedent seen by a shoreside physician and/or specialist;

18

    i.   Breaching the prevailing professional standard of care for health care providers (i.e., the level of care, skill and treatment that, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by a reasonably prudent similar health care provider).

66. As a direct and proximate result of the negligence of Defendant, the Decedent was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of the Decedent's injuries, suffered physical handicap, and died. The Decedent's family also lost the benefit of the Decedent's companionship, guidance, love and nurturing, services, and financial support, all of which damages are hereby claimed for recovery in this case.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant and demands trial by jury.

## COUNT VII – NEGLIGENCE AGAINST CARNIVAL FOR THE ACTS OF THE MEDICAL PERSONNEL BASED ON A THEORY OF VICARIOUS LIABILITY UNDER APPARENT AGENCY

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through eight (8) and seventeen (17) through thirty-six (36) above, as though alleged originally herein, and further alleges:

67. At all times material hereto, the Medical Personnel were the ship's doctors and nurses aboard the vessel.

68. At all times material hereto, Carnival and the Medical Personnel represented to passengers aboard the vessel, including Plaintiff and the Decedent, that the Medical Personnel were Carnival's agents and/or employees, as follows:

a. The Medical Personnel worked in the medical facility, which was created, owned and/or operated by Carnival.

b. Carnival's logo and insignias were displayed in various places throughout the medical facility.

c. Carnival's website publicly described the medical facility in proprietary language, including, but not limited to, "our medical centers…"

d. Carnival billed and collected payments directly from passengers for the medical services provided by the Medical Personnel, and Carnival did so through passengers' onboard accounts with Carnival.

e. The Medical Personnel were employed full-time by Carnival.

f. The Medical Personnel were paid a salary by Carnival.

g. The Medical Personnel wore uniforms and/or nametags, which were provided by Carnival and had Carnival's name and logo.

h. The Medical Personnel referred to themselves as crewmembers, and Carnival referred to the Ship's Doctors and Ship's Nurses as ship's officers.

i. The Medical Personnel were under the commands of the ship's officers and followed all of the master's rules and regulations.

j. The Medical Personnel spoke to Plaintiff as though they had authority by Carnival to render medical treatment to Plaintiff and on Carnival's behalf.

69.     At all times material hereto, Plaintiff and the Decedent reasonably relied on the above, to their detriment, so as to believe that the Medical Personnel were the agents and/or employees of Carnival in choosing to cruise aboard the vessel, seek medical attention at the vessel's medical facility, and receive medical treatment from the Medical Personnel aboard same.

70.     At all times material hereto, it was reasonable for Plaintiff and the Decedent to believe that the Medical Personnel were authorized to render medical services for Carnival's benefit because Carnival billed passengers directly for the onboard medical services, Carnival's logo and insignias were displayed in various places throughout the medical facility, and/or Carnival's name and logo were on the Medical Personnel's uniforms and/or nametags. It was also

20

reasonable because Carnival marketed the shipboard medical facility and/or the Medical Personnel in a manner so as to induce passengers, like Plaintiff and The Decedent, to buy cruises aboard Carnival's vessels and utilize its medical facility.

71.     For instance, Carnival marketed its cruise ships as having "medical centers [that] meet or exceed the standards established by the Cruise Lines International Association (CLIA) and the American College of Emergency Physicians (ACEP)." Further, the Medical Personnel, specifically, spoke to Plaintiff and provided the Decedent medical assessment, treatment and/or advice as though he had authority by Carnival to render medical treatment on Carnival's behalf.

72.     At all times material hereto, Plaintiff and The Decedent's reasonable reliance was detrimental because, had they known that the Medical Personnel were not Carnival's agents and/or employees, they would not have selected the cruise, sought treatment from the Medical Personnel, relied upon the treatment rendered by Carnival /the Medical Personnel and/or forgone seeking emergency medical treatment shoreside through alternative means outside of Carnival while they remained aboard the vessel during the subject incident.

73.     At all times material hereto, Carnival had a duty to provide the Decedent with reasonable care under the circumstances, including through the conduct of its apparent agents.

74.     At all times material hereto, Carnival breached its duty to provide reasonable care under the circumstances through the following acts and/or omissions of its apparent agents, the Medical Personnel:

   a. Failing to timely assess the Decedent's medical condition;

   b. Failing to timely arrange the Decedent's emergency evacuation from the vessel, including, but not limited to unreasonably delay in alerting the U.S. Coast Guard as to the Decedent's medical condition;

   c. Failing to timely inform the vessel's Captain as to the Decedent's emergency medication condition;

21

d. Failing to provide the Decedent with prompt and/or proper shipboard medical care, including but not limited to the provision of appropriate medications available shipboard to treat his medical condition and/or slow its progression;

e. Failing to timely arrange an emergency medical response to the Decedent's emergency medical condition;

f. Failing to have "Face to Face Telemedicine" tools in place and/or failure to use those tools when necessary, such as in The Decedent's case here and/or otherwise failing to have adequate procedures, policies or tools in place to ensure adequate communication between the Medical Personnel and Carnival's shoreside medical department;

g. Failure to furnish the Decedent and/or Plaintiff such medical advice, aid and/or assistance as an ordinarily prudent person would render under similar circumstances in view of Carnival's undertaking to equip the vessel with a medical facility and medical personnel;

h. Failing to utilize telephone and/or video consultations with specialists, shipboard or shoreside, during the medical care and treatment of the Decedent and/or otherwise failing to promptly have the Decedent seen by a shoreside physician and/or specialist;

i. Breaching the prevailing professional standard of care for health care providers (i.e., the level of care, skill and treatment that, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by a reasonably prudent similar health care provider).

75. Carnival's negligent acts and omissions (and/or its agents, apparent agents, servants, and/or employees negligent acts and omissions), as outlined above, caused the Decedent's death.

76. As a direct and proximate result of the negligence of Defendant, the Decedent was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of the Decedent's injuries, suffered physical handicap, and died. The Decedent's family also lost the benefit of the Decedent's companionship,

guidance, love and nurturing, services, and financial support, all of which damages are hereby claimed for recovery in this case.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant and demands trial by jury.

### COUNT VIII – NEGLIGENCE AGAINST CARNIVAL FOR THE CONDUCT OF MEDICAL PERSONNEL BASED ON A THEORY OF VICARIOUS LIABILITY UNDER JOINT VENTURE

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through eight (8) and seventeen (17) through thirty-six (36) above, as though alleged originally herein, and further alleges:

77. At all times material hereto, the Ship's Doctors and Ship's Nurses served as Medical Personnel aboard the vessel.

78. At all times material hereto, Carnival and the Medical Personnel had the intention to engage in a joint venture to provide medical services to Carnival's passengers. The intention was established by verbal agreement and/or conduct. The common purpose of the venture was to profit from providing medical services to Carnival's passengers.

79. At all times material hereto, Carnival and the Medical Personnel had joint control or right of control over the medical care and services provided to passengers, as follows:

  a. As its part of the joint venture, Carnival controlled and oversaw certain aspects of the day-to-day operations of the medical facility and medical personnel aboard the vessel. For instance, Carnival's shoreside medical department monitored and supervised the Ship's Doctors and Ship's Nurses through its shoreside orientation trainings, standard operating procedures, and/or other standards, policies, procedures and guidelines the Ship's Doctors and Ship's Nurses were required to follow. Carnival ordered and restocked the medical supplies and medicine, and it ordered and maintained the medical equipment. Carnival had control over the billings and collections for the vessel's medical facility. Carnival provided approval and/or authorization on proposed medical evacuations. Carnival provided medical consultations to passengers from shoreside

23

doctors. Carnival controlled and/or had the right to control the marketing of its medical facility and/or the Ship's Doctors/Ship's Nurses.

b.  As their part of the joint venture, the Ship's Doctors and Ship's Nurses controlled and oversaw certain aspects of the day-to-day operations of the medical facility and medical personnel aboard the vessel.  For instance, the Ship's Doctors and Ship's Nurses provided the labor through their consultations, treatment and care to passengers aboard the vessel so as to generate charges to passengers. The Ship's Doctors/Ship's Nurses initiated and/or requested medical evacuations for passengers.  The Ship's Doctors completed and/or oversaw the medical personnel's completion of medical records.

80.     At all times material hereto, Carnival and the Medical Personnel shared a joint proprietary or ownership interest in the vessel's medical facility. Carnival had an interest in recommending, marketing, and operating the vessel's medical facility as well as billing and collecting payment for the medical services provided to passengers aboard the vessel.  The Medical Personnel had a proprietary interest in the time and labor expended in operating the vessel's medical facility.

81.     At all times material hereto, Carnival and the Medical Personnel had the duty to share the profits and the losses of the joint venture based on the circumstances of their agreement. Carnival and the Medical Personnel relied on a single billing system and a unified strategy of Carnival's marketing and advertisements.  Carnival and the Medical Personnel shared profits and losses, and they split revenue from medical services and supplies rendered to Carnival's thousands of cruise passengers. The Ship's Doctors had the sole discretion to render medical care, treatment and services to passengers and to sell prescription medication and medical supplies to passengers; and the Ship's Doctors and Ship's Nurses increased profits by rendering medical care, treatment and services to passengers and by prescribing passengers medications and supplies. Carnival's compensation for the Medical Personnel was dependent, at least in part, on the medical facility's revenues; and the medical facility's revenues depended, at least in part, on the recommendations and prescriptions the Ship's Doctors provided to passengers.  Further, in Florida, a duty to share

24

losses actually and impliedly exists as a matter of law where one party supplies the labor, experience and skill (like the Ship's Doctors and Ship's Nurses), and the other the necessary capital (like Carnival).

82.     At all times material hereto, Carnival had a duty to provide The Decedent with reasonable care under the circumstances, including through the acts of its joint venturers.

83.     At all times material hereto, Carnival breached its duty to provide reasonable care under the circumstances through the following acts and/or omissions of its joint venturers, the Medical Personnel and/or Shoreside Medical Department:

    a. Failing to timely assess the Decedent's medical condition;

    b. Failing to timely arrange the Decedent's emergency evacuation from the vessel, including, but not limited to unreasonably delay in alerting the U.S. Coast Guard as to The Decedent's medical condition;

    c. Failing to timely inform the vessel's Captain as to the Decedent's emergency medication condition;

    d. Failing to provide the Decedent with prompt and/or proper shipboard medical care, including but not limited to the provision of appropriate medications available shipboard to treat his medical condition and/or slow its progression;

    e. Failing to timely arrange an emergency medical response to the Decedent's emergency medical condition;

    f. Failing to have "Face to Face Telemedicine" tools in place and/or failure to use those tools when necessary, such as in The Decedent's case here and/or otherwise failing to have adequate procedures, policies or tools in place to ensure adequate communication between the Medical Personnel and Carnival's shoreside medical department;

    g. Failure to furnish the Decedent and/or Plaintiff such medical advice, aid and/or assistance as an ordinarily prudent person would render under similar circumstances in view of Carnival's undertaking to equip the vessel with a medical facility and medical personnel;

h. Failing to utilize telephone and/or video consultations with specialists, shipboard or shoreside, during the medical care and treatment of the Decedent and/or otherwise failing to promptly have the Decedent seen by a shoreside physician and/or specialist;

i. Breaching the prevailing professional standard of care for health care providers (i.e., the level of care, skill and treatment that, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by a reasonably prudent similar health care provider).

84. As a direct and proximate result of the negligence of Defendant, the Decedent was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of the Decedent's injuries, suffered physical handicap, and died. The Decedent's family also lost the benefit of the Decedent's companionship, guidance, love and nurturing, services, and financial support, all of which damages are hereby claimed for recovery in this case.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant and demands trial by jury.

## COUNT IX – NEGLIGENT MEDICAL STAFFING, PROVISIONING AND/OR EQUIPPING OF MEDICAL FACILITY AGAINST CARNIVAL

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through eight (8) and seventeen (17) through thirty-six (36) above, as though alleged originally herein, and further alleges:

85. At all times material hereto, it was the duty of Carnival to exercise reasonable care to properly man the vessel's medical facilities, to provide the appropriate resources to the medical staff, and to provide reasonable and appropriate equipment, supplies, and medications for the vessel's medical facility.  These duties arise through Carnival (a) voluntarily undertaking to

provide medical facilities, doctors, nurses and/or other medical staff for passengers aboard its cruise ships; (b) marketing its cruise ships as providing "medical centers [that] meet or exceed the standards established by the Cruise Lines International Association (CLIA) and the American College of Emergency Physicians (ACEP)"; and (c) marketing its cruise ships as having "from one physician and three nurses to as many as two physicians and five nurses."

86. On or about the above date(s), Carnival and/or its agents, servants, joint venturers and/or employees breached its duty to exercise reasonable care, based on the following acts and/or omissions:

a. Failing to have an adequate number of medical employees to handle medical emergencies, as it is unrealistic to have a medical team consisting of one or two doctors and/or two or three nurses to perform all the services required on a ship carrying thousands of passengers and crew;

b. Failing to have at least one Ship's Doctor on duty at all times on a rotational basis in order to evaluate passenger's medical emergencies, like that of the Decedent's case here;

c. Failing to supply and/or maintain the vessel's medical facility with operational medical equipment to promptly and/or adequately assess and/or diagnose the Decedent's medical condition, e.g. a mobile CT scanner;

d. Failing to supply sufficient and/or adequate medication to promptly and/or adequately treat the Decedent's medical condition; and/or

e. Failing to supply the vessel's medical facility with resources, such as manuals and treatises, and/or access for contacting medical professionals in the United States for consultation about the care and treatment of significant and/or emergency medical conditions of its passengers, like that of the Decedent's here.

87. At all times material hereto, Carnival knew of the foregoing conditions rendering the medical facility inadequate, or the conditions existed for a sufficient length of time so that Carnival, in the exercise of reasonable care under the circumstances, should have learned of them. This knowledge was or should have been acquired through (a) inventories and/or inspections of the vessel's medical facility conducted by Carnival, and/or (b) prior incidents involving ship's

27

doctors and/or nurses providing improper medical treatment to passengers aboard Carnival's vessels due, at least in part, to the inadequate medical facilities. *See, e.g., Murphy v. Carnival Corp.*, Case No. 19-cv-21450-RNS (S.D. Fla. 2019); *Gharfeh v. Carnival Corp.*, 309 F. Supp. 3d 1317, 1327 (S.D. Fla. 2018); *Rinker v. Carnival Corp.*, Case No. 09-23154-CIV (S.D. Fla. 2010). These inventories, inspections and/or prior incidents did or should have revealed the conditions set forth in the preceding paragraph.

88. Carnival's negligent acts and omissions (and/or its agents, apparent agents, servants, and/or employees negligent acts and omissions), as outlined above, caused Plaintiff's death.

89. As a direct and proximate result of the negligence of Defendant, the Decedent was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of the Decedent's injuries, suffered physical handicap, and died. The Decedent's family also lost the benefit of the Decedent's companionship, guidance, love and nurturing, services, and financial support, all of which damages are hereby claimed for recovery in this case

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant and demands trial by jury.

**COUNT X – GENERAL NEGLIGENCE AGAINST DR. MUHAMMAD RAUF**

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through eight (8) and seventeen (17) through thirty-six (36) above, as though alleged originally herein, and further alleges:

28

90. At all times material, DR. MUHAMMAD RAUF owed Plaintiff a duty to provide reasonable care under the circumstances.

91. On or about February 12, 2024, DR. MUHAMMAD RAUF breached its duty to provide Plaintiff reasonable care under the circumstances as follows:

a. Failing to timely and/or reasonably assess the Decedent medical condition;

b. Failing to timely arrange the Decedent's emergency evacuation from the vessel, including, but not limited to an unreasonable delay in alerting land-based medical providers as to Plaintiff's medical condition;

c. Failing to timely inform the vessel's Captain as to the Decedent's emergency medication condition;

d. Failing to provide the Decedent with prompt and/or proper shipboard medical care, including but not limited to the provision of appropriate medications available shipboard to treat her medical condition and/or slow its progression;

e. Failing to timely arrange an emergency medical response to the Decedent's emergency medical condition;

f. Failing to reasonably use any "Face to Face Telemedicine" tools in place and/or failure to use those tools when necessary, such as in Plaintiff's case here and/or otherwise failing to have adequate procedures, policies or tools in place to ensure adequate communication between the Medical Personnel and Carnival's shoreside medical department;

g. Failure to furnish Plaintiff such medical advice, aid and/or assistance as an ordinarily prudent person would render under similar circumstances;

h. Failing to promptly and/or adequately diagnose the Decedent's medical emergency condition;

i. Failing to adequately treat the Decedent's medical condition as a medical emergency;

j. Failing to utilize telephone and/or video consultations with specialists, shipboard or shoreside, during the medical care and treatment of the Decedent and/or otherwise failing to promptly have the Decedent seen by a shoreside physician and/or specialist.

29

92.     As a direct and proximate result of the negligence of Defendant, the Decedent was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of the Decedent's injuries, suffered physical handicap, and died. The Decedent's family also lost the benefit of the Decedent's companionship, guidance, love and nurturing, services, and financial support, all of which damages are hereby claimed for recovery in this case.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant and demands trial by jury.

**COUNT XI – WRONGFUL DEATH CLAIM BROUGHT AGAINST DEFENDANTS PURSUANT TO TEXAS STATE LAW, TEX. CIV. CODE §§ 71.001 - 71.012**

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through eight (8) and seventeen (17) through thirty-six (36) above, as though alleged originally herein, and further alleges:

93. Plaintiff asserts this Count against Defendants in the alternative to the foregoing counts.

94. Plaintiff asserts entitlement to collect damages from Defendants pursuant to Texas state law, including its wrongful death statute, Texas Civil Code §§ 71.001 – 71.012, based upon facts that include that: the Decedent was a Texas citizen and resident at the time of his death, and many of the Decedent's survivors, beneficiaries and heirs are currently Texas residents.

95. At all times material hereto, Carnival and/or Dr. Muhammad Rauf breached their respective duties and/or joint duty to exercise reasonable care under the circumstances through the following acts and/or omissions:

   a.   Failing to timely assess the Decedent's medical condition;

30

b. Failing to timely arrange the Decedent's emergency evacuation from the vessel, including, but not limited to unreasonably delay in alerting the U.S. Coast Guard as to the Decedent's medical condition;

c. Failing to timely inform the vessel's Captain as to the Decedent's emergency medication condition;

d. Failing to provide the Decedent with prompt and/or proper shipboard medical care, including but not limited to the provision of appropriate medications available shipboard to treat his medical condition and/or slow its progression;

e. Failing to timely arrange an emergency medical response to the Decedent's emergency medical condition;

f. Failing to have "Face to Face Telemedicine" tools in place and/or failure to use those tools when necessary, such as in The Decedent's case here and/or otherwise failing to have adequate procedures, policies or tools in place to ensure adequate communication between the Medical Personnel and Carnival's shoreside medical department;

g. Failure to furnish the Decedent and/or Plaintiff such medical advice, aid and/or assistance as an ordinarily prudent person would render under similar circumstances in view of Carnival's undertaking to equip the vessel with a medical facility and medical personnel;

h. Failing to utilize telephone and/or video consultations with specialists, shipboard or shoreside, during the medical care and treatment of the Decedent and/or otherwise failing to promptly have the Decedent seen by a shoreside physician and/or specialist;

i. Breaching the prevailing professional standard of care for health care providers (i.e., the level of care, skill and treatment that, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by a reasonably prudent similar health care provider).

96.     Defendants' negligent conduct, as outlined above, caused the Decedent's death.

97.     As a direct and proximate result of the negligence of Defendants, the Decedent was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of the Decedent's injuries, suffered physical

31

handicap, and died. The Decedent's family also lost the benefit of the Decedent's companionship, guidance, love and nurturing, services, and financial support, all of which damages are hereby claimed for recovery in this case.

**WHEREFORE**, the Plaintiff demands damages, on behalf of the Decedent and all of the Decedent's heirs, survivors and beneficiaries, as allowed under the applicable state law, including, but not limited to, loss of love, companionship, guidance and support, past and future earnings, loss of services, pain and suffering, funeral expenses and exemplary damages. The Plaintiff further demands trial by jury.

### COUNT XII – WRONGFUL DEATH CLAIM BROUGHT AGAINST DEFENDANTS PURSUANT TO FLORIDA STATE LAW, FLA. CIV. CODE §§ 768.16 – 768.26

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through eight (8) and seventeen (17) through thirty-six (36) above, as though alleged originally herein, and further alleges:

98. Plaintiff asserts this Count against Defendants in the alternative to the foregoing counts.

99. Plaintiff asserts entitlement to collect damages from Defendants pursuant to Florida state law, including its wrongful death statute, Florida Civil Code §§ 768.16 – 768.26, based upon facts that include that: Carnival's principal place of business is in Florida, Defendants' negligent conduct occurred in Florida, and the Decedent became injured and died in Florida.

100. At all times material hereto, Carnival and/or Dr. Muhammad Rauf breached their respective duties and/or joint duty to exercise reasonable care under the circumstances through the following acts and/or omissions:

   a. Failing to timely assess the Decedent's medical condition;

   b. Failing to timely arrange the Decedent's emergency evacuation from the vessel,

including, but not limited to unreasonably delay in alerting the U.S. Coast Guard as to the Decedent's medical condition;

c. Failing to timely inform the vessel's Captain as to the Decedent's emergency medication condition;

d. Failing to provide the Decedent with prompt and/or proper shipboard medical care, including but not limited to the provision of appropriate medications available shipboard to treat his medical condition and/or slow its progression;

e. Failing to timely arrange an emergency medical response to the Decedent's emergency medical condition;

f. Failing to have "Face to Face Telemedicine" tools in place and/or failure to use those tools when necessary, such as in The Decedent's case here and/or otherwise failing to have adequate procedures, policies or tools in place to ensure adequate communication between the Medical Personnel and Carnival's shoreside medical department;

g. Failure to furnish the Decedent and/or Plaintiff such medical advice, aid and/or assistance as an ordinarily prudent person would render under similar circumstances in view of Carnival's undertaking to equip the vessel with a medical facility and medical personnel;

h. Failing to utilize telephone and/or video consultations with specialists, shipboard or shoreside, during the medical care and treatment of the Decedent and/or otherwise failing to promptly have the Decedent seen by a shoreside physician and/or specialist;

i. Breaching the prevailing professional standard of care for health care providers (i.e., the level of care, skill and treatment that, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by a reasonably prudent similar health care provider).

101. Defendants' negligent conduct, as outlined above, caused the Decedent's death.

102. As a direct and proximate result of the negligence of Defendants, the Decedent was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of the Decedent's injuries, suffered physical handicap, and died. The Decedent's family also lost the benefit of the Decedent's companionship,

guidance, love and nurturing, services, and financial support, all of which damages are hereby claimed for recovery in this case.

**WHEREFORE**, the Plaintiff demands damages, on behalf of the Decedent and all of the Decedent's heirs, survivors and beneficiaries, as allowed under the applicable state law, including, but not limited to, loss of love, companionship, guidance and support, past and future earnings, loss of services, pain and suffering, funeral expenses and exemplary damages. The Plaintiff further demands trial by jury.

Dated: September 25, 2024                    Respectfully submitted,

                                             LIPCON, MARGULIES
                                             & WINKLEMAN, P.A.
                                             *Attorneys for Plaintiff*
                                             2800 Ponce de Leon Blvd., Suite 1480
                                             Coral Gables, FL 33134
                                             Telephone No.: (305) 373-3016
                                             Facsimile No.: (305) 373-6204

                                        By:  */s/ Luis Alexander Perez*
                                             **LUIS ALEXANDER PEREZ**
                                             Florida Bar No.: 125452
                                             aperez@lipcon.com