UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-23677-BLOOM/Elfenbein

**LINDA D'AMBRA,**
*as personal representative for the estate of Joseph D'Ambra, deceased,*

    Plaintiff,

v.

**CARNIVAL CORPORATION**, *et al.*,

    Defendants.
_____/

## ORDER ON PLAINTIFF'S MOTION TO COMPEL BETTER RESPONSES TO SECOND REQUEST FOR PRODUCTION

**THIS CAUSE** is before the Court on Plaintiff Linda D'Ambra's ("Plaintiff") Notice of Hearing, ECF No. [20], in which she alerted the Court to the following issues to be discussed at the Discovery Hearing scheduled on April 30, 2025 (the "Hearing"): "Carnival's objections to Plaintiff's second request for production, item nos. 1 and 2." ECF No. [20] at 1.[1] At the Hearing, Plaintiff made an *ore tenus* Motion to Compel Better Responses to the Second Request for Production (the "Motion to Compel"). *See* ECF Nos. [20], [23], [24]. Following oral argument, the Court determined that the authorities the Parties provided were insufficient to determine the issue, so it ordered the Parties to provide supplemental briefing "regarding substantially similar incidents and proportionality as it relates to fleet-wide discovery given the specific issues involved in this case." *See* ECF No. [23]. The Parties each timely complied with the deadline to provide

---

[1] Plaintiff also filed supplemental materials for the Court's consideration. *See* ECF No. [22].

the requested supplemental briefing. *See* ECF Nos. [25] and [25]. With the benefit of oral argument and the supplemental briefing, this issue is now ripe for review.

## I. BACKGROUND

Plaintiff, in her capacity as personal representative of the estate of her late husband, Joseph D'Ambra, has filed a lawsuit against Carnival "to recover all damages permitted by law arising from the Decedent's pre-death pain and suffering, the mental pain and suffering, loss of guidance, loss of services, and loss of consortium suffered by the Decedent's family caused by the Decedent's death, and medical expenses incurred by the Decedent's injuries and death." ECF No. [1] at ¶¶1-2. According to the Complaint, on or about February 12, 2024, the Decedent was a passenger on board a Carnival cruise ship while it was in Key West, Florida and within Florida waters. *Id.* at ¶¶12, 13. On this date, Decedent "tripped over a chaise lounge chair that was not put in its proper place and/or not properly aligned with the surrounding other chaise lounge chairs on or about Deck 10 of the subject vessel," and as a result, he "severely injured his face and head." *Id.* at ¶¶13-14. Following this incident, Decedent went to Carnival's shipboard medical center where Defendant Muhammad Rauf ("Rauf") examined him and "observed Plaintiff sleeping and/or becoming unconscious in the medical center." *Id.* at ¶¶29-30. During this encounter, Rauf "was advised that the Decedent recently sustained a head injury and was on blood thinners." *Id.* at ¶30. About two hours after the Decedent arrived at the shipboard medical center, Rauf discharged and "advised him to rest in his cabin" without making any arrangements for his medical disembarkation for treatment from shoreside medical doctors. *Id.* Less than two hours after the discharge, "the Decedent began to vomit and was taken back to the vessel's medical center" at which time Carnival's medical personnel arranged for his medical evacuation. *Id.* at ¶32. Two

days later, on February 14, 2024, the Decedent died, and the autopsy determined that his cause of death was "blunt force injury to the head." *Id.* at ¶33.

In the Complaint, Plaintiff alleges 11 counts against Carnival: negligent failure to maintain (trip and fall incident) (Count 1); general negligence (trip and fall incident) (Count 2); negligent failure to warn (trip and fall incident) (Count 3); general negligence (medical negligence) (Count 4); negligent failure to warn (medical negligence) (Count 5); negligence for the conduct of the medical personnel based on a theory of vicarious liability under respondeat superior (Count VI); negligence for the acts of the medical personnel based on a theory of vicarious liability under apparent agency (Count VII); negligence for the conduct of medical personnel based on a theory of vicarious liability under joint venture (Count VIII); negligent medical staffing, provisioning and/or equipping of medical facility (Count IX); wrongful death pursuant to Texas state law (Count XI); and wrongful death pursuant to Florida state law (Count XII). *See* ECF No. [1].

Relevant to the issues raised here are Plaintiff's claims against Carnival in Count 2 for general negligence in which Plaintiff alleges that Carnival failed to: "reasonably organize the lounge chair in a safe manner to avoid it protruding onto the passenger walkway;" failed "to reasonably comply with Carnival's own policy and/or procedure to have walkways be free of trip hazards and/or organize the lounge chairs;" and failed "to correct hazardous conditions following other and prior trip and fall accidents on the same area, same deck and/or same flooring surface." *Id.* at ¶41(a)-(c).

Against this backdrop, at the Hearing and in its Supplemental Briefing, Plaintiff asked the Court to compel Carnival to provide discovery regarding prior similar incidents requested in the Second Request for Production, even though these requests are more expansive than the scope of discovery to which the Parties previously stipulated during a Local Rule 7.1 meet and confer. For

context, months earlier, Plaintiff propounded a Request for Production on Carnival seeking: "Any and all documents pertaining to trip and fall accidents and/or incidents involving lounge chairs on open decks aboard any of Defendant's fleet of vessel[s], within a five-year period before Plaintiff's alleged February 12, 2024 incident." *See* ECF No. [22-1] at 4. After Carnival objected to the scope of the request, the Parties met and conferred and Plaintiff's counsel sent an email to defense counsel, agreeing to limit the scope of the request as follows: "I agree to limit this to 3 years prior and the subject vessel and her sister ships. **If no prior incidents are discovered as to these limitations**, I reserve the right to seek fleetwide priors. I will not limit the scope, 'trip and fall incidents on lounge chairs.' I content I am entitled to guest injury statements for responsive prior incidents."[2] Based on this agreement, Carnival provided a supplemental discovery response in which it specifically referenced "the agreements made during the parties' Rule 7.1 discovery conference" and provided non-privileged responsive information "pertaining to trip and fall accidents and/or incidents involving lounge chairs on open decks on the subject vessel and sister ships" for the "3 years prior to the subject incident." *See* ECF No. [22-1] at 4, 7. Specifically, Carnival identified two incidents meeting this description, one involving a passenger who got her foot stuck with one of the legs of the deck chair, causing her to fall forward, and another passenger who tripped on a deck chair leg and fell. *See* ECF No [22-1] at 7.

Dissatisfied with the results Plaintiff received from Carnival for the three-year period for the subject vessel and sister-class ships, Plaintiff propounded a Second Request for Production containing two additional document requests, which are at issue in the Motion to Compel, seeking

---

[2] This email has not been formally filed on the docket. This issue came up during the Hearing. Carnival emailed a copy of the confirming email to the Court's chambers' inbox and to Plaintiff's counsel during the Hearing, and this email agreement was discussed at length. Plaintiff's counsel agreed that he sent this email to Carnival's counsel as part of their meet and confer. The Court notes that it has added the emphasis to the language in bold in the email.

the same type of prior incident information on a fleetwide basis for the same three-year period. In Request Number 1, Plaintiff seeks: "Any and all documents pertaining to passenger-guest trip and fall accidents and/or incidents involving lounge chairs on the pool decks aboard any of Defendant's fleet of vessel, within the three year period before Plaintiff's alleged February 12, 2024 incident." *See* ECF No. [20-2] at 3.  And, in Request Number 2, Plaintiff seeks: "Any and all documents pertaining to complaints and/or notices made by passenger guests to Defendant concerning the disorganized, out of place, in the way and/or dangerous arrangement of lounge chairs on pool decks aboard any of Defendant's fleet of vessel within a three year period before Plaintiff's alleged February 12, 2024 incident." *Id.* at 4.

Carnival, in turn, objected to the requests as overly broad in scope and not proportional to the needs of the case.[3] *Id.* at 3-4. During the Hearing, Carnival argued that the two requests contained within the Second Request for Production were an end-around the stipulation the Parties made during their meet-and-confer discussions after Carnival relied on such stipulation to compromise on the appropriate scope of the original discovery request (Request Number 62). Carnival asks the Court to enforce the Parties' agreement, arguing that, otherwise, such conduct would discourage Parties from compromising during the meet-and-confer process as such stipulations would be meaningless.  For her part, Plaintiff did not dispute that she agreed to limit the request as noted in Plaintiff's counsel's email, but Plaintiff argued that the email meant to say that she reserved her right to expand the scope if there were no substantially similar incidents.

Regarding the scope of the requests, Carnival argued that there is no reason to go beyond the sister-class vessels and extend the request to all 27 ships in Carnival's fleet, as such a request is overly broad and not proportional to the needs of the case, citing to various decisions within this

---

[3] Although Carnival also objected on other grounds, such as "vague," "ambiguous," and seeking documents protected under the "work-product" doctrine, the other objections were not the focus of the Hearing.

District limiting similar requests to the sister class. *See* ECF No. [25]. Plaintiff, in turn, argued that the discovery is relevant to her claims of negligence, that Carnival has a fleetwide policy regarding the placement of lounge chairs that should open the door to fleetwide discovery, and that the request is proportional given the facts in this case. *See* ECF No. [24].

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 34(a)(1), "[a] party may serve on any other party a request within the scope of Rule 26(b)(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample" "any designated documents" "in the responding party's possession, custody, or control." *See* Fed. R. Civ. P 34(a)(1). Rule 26, in turn, allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1). When addressing matters of proportionality, courts consider various factors, such as "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "It is well established that the courts must employ a liberal standard in keeping with the purpose of the discovery rules." *Off. Depot, Inc. v. Elementum Ltd.*, No. 19-CV-81305, 2020 WL 5506445, at *3 (S.D. Fla. Sept. 14, 2020). However, the 2015 amendments to Rule 26(b)(1) "crystalize[] the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *In re: Takata Airbag Prods. Liab. Litig.*, No. 14-24009-CV, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016) (quoting Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary 6 (2015)). "Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case." *Tiger v.*

*Dynamic Sports Nutrition, LLC*, No. 15-CV-1701-OR-41-TBS, 2016 WL 1408098, at *2 (M.D. Fla. Apr. 11, 2016).

### III. DISCUSSION

The Parties raise two issues for the Court's determination: (1) whether the Court should enforce the prior discovery stipulation between the Parties in which they agreed to limit the scope of prior similar incidents to three years and sister-class ships and (2) whether fleetwide discovery is overly broad and proportional to the needs of the case. The Court concludes that it should enforce the stipulation, and even in the absence of the stipulation, the proportionality considerations in this case do not warrant fleetwide discovery.

Starting with the first issue, the Court rehashes the Parties' agreement that Plaintiff's counsel memorialized in writing. The email agreed as follows: "I agree to limit this to 3 years prior and the subject vessel and her sister ships. **If no prior incidents are discovered as to these limitations**, I reserve the right to seek fleetwide priors. I will not limit the scope, 'trip and fall incidents on lounge chairs.' I content I am entitled to guest injury statements for responsive prior incidents." Here, Plaintiff very clearly agreed that the appropriate scope was any similar incidents on the ship where the incident occurred and on all sister-class ships for the three prior years. The only caveat to this agreement was that Plaintiff reserved the right to expand the scope to the entire fleet if there were no prior incidents discovered "as to these limitations." The Parties' agreement did not suggest Plaintiff could expand the scope if the incidents were not sufficiently similar to the one involved in the case. The agreed-upon reservation of rights applied only if there were no prior incidents whatsoever. And, following that stipulation, Carnival identified two prior incidents in which a passenger tripped and fell on a deck chair in the pool.

The Court takes issue with the idea that Plaintiff stipulated to the scope of discovery as to

prior incidents and then, after the results of that stipulation were not to her liking, she attempted to circumvent that agreement by propounding nearly identical follow-up discovery requests that expanded the scope beyond the stipulation. Such tactics undermine the spirit of the meet-and-confer process in which the Parties are expected to have meaningful discussions to determine the appropriate scope of discovery without the need for Court intervention. If the Court allowed parties to disregard such discussions and stipulations simply because the propounding party was later dissatisfied with the results of such stipulation – a stipulation reflecting their agreement about what is relevant and proportional to the needs of the case – then parties would have no incentive to meet and confer in good faith. Condoning such behavior would leave a producing party, which has compromised to reach a resolution, without any assurances as to whether the parties have indeed reached an agreement and would incentivize parties to litigate, rather than informally resolve, their discovery disputes.

And although Plaintiff now attempts to recast the stipulation in a different light, Plaintiff's words in the email memorializing that agreement were not ambiguous. The Parties agreed to limit the scope of the request to prior similar incidents that occurred on the subject ship and sister ships for three years before the incident and the only exception to that stipulation (that no such incidents exist within these limitations) was not triggered as Carnival identified and produced information about two prior similar incidents. The Court, therefore, enforces the Parties' prior agreement and denies the Motion to Compel on this basis.

Even if the Court turns to the merits of the objections and disregards the Parties' prior agreement, the result here is ultimately the same because the Court finds that discovery limited to the subject ship and the sister ships, instead of the entire fleet, is relevant to the claims and proportional to the needs of the case. The Court explains its reasoning.

In his Motion to Compel, Plaintiff seeks to obtain information about prior incidents to prove that Defendant had notice of the dangers caused by disorganized lounge chairs on the pool deck. As a recap, in Count 2, Plaintiff alleges that Carnival failed to: "reasonably organize the lounge chair in a safe manner to avoid it protruding onto the passenger walkway;" failed "to reasonably comply with Carnival's own policy and/or procedure to have walkways be free of trip hazards and/or organize the lounge chairs;" and failed "to correct hazardous conditions following other and prior trip and fall accidents on the same area, same deck and/or same flooring surface." *Id.* at ¶41(a)-(c). One way Plaintiff can prove that Carnival had notice of such dangers is to obtain evidence of prior similar incidents that are not too remote in time. *See Kulakowski v. Royal Caribbean Cruises, Ltd.*, No. 16-CV-21375, 2016 WL 10951816, at *4 (S.D. Fla. Nov. 2, 2016). For discovery purposes, a plaintiff can request discovery about incidents that are "similar enough" to the one at issue, and, depending on the circumstances, discoverable similar incidents may occur on the vessel itself and "on different vessels by the same operator." *Id.* at 4-5. Indeed, the court in *Kulakowski* noted that discovery of prior incidents on sister ships can be relevant if there is nothing specific about the vessel that affects the theory of the defendant's breach of duty. *Id.*

Applying a proportionality analysis, as courts must do, it is common for courts in this District to limit discovery to the sister-class ships. *See Hernandez v. Carnival Corp.*, No. 23-CV-20238-RAR, 2023 WL 5747682, at *2 (S.D. Fla. Sept. 6, 2023) (noting that, under proportionality considerations, "in cruise line cases, discovery of prior incidents is usually limited to the same class of ship"); *Jaber v. NCL (Bahamas) Ltd.*, No. 14-20158-CIV, 2014 WL 12629670, at *5 (S.D. Fla. Oct. 24, 2014) (denying request for fleetwide discovery when the plaintiff failed to make any showing that discovery should go beyond the subject vessel, finding that such discovery is "unreasonable and disproportionate under the circumstances."); *Rader v. NCL (Bahamas) Ltd.*,

No. 16-CIV-23390, 2017 WL 7796320, at *3 (S.D. Fla. Apr. 27, 2017) (limiting discovery of prior similar incidents to class-wide discovery); *Glatter v. MSC Cruises S.A.*, No. 18-62219-CIV, 2019 WL 1300896, at *4 (S.D. Fla. Feb. 7, 2019) (finding that the requested discovery was not proportional to the needs of the case when the defendant produced information about eight prior incidents on the ship and there was little value to be gained by requiring the search of such records for sister ships).

The Parties here do not dispute what constitutes a "similar enough" incident or the appropriate time scope. The Parties have already agreed to these parameters. The only question is whether prior similar incidents throughout the fleet is proportional to the needs of the case. Turning to this analysis, the Court finds that Plaintiff has already received information about two incidents where passengers tripped and fell on deck chairs by the pool deck. Plaintiff speculates that these incidents "are not substantially similar to Plaintiff's alleged incident, as the prior incidents disclosed do not include any allegations that the prior passengers tripped over lounge chairs that were disorganized." *See* ECF No. [24] at 2. However, Plaintiff provides no information to support this assertion as Plaintiff did not point to any efforts to obtain further discovery or investigate the circumstances or the cause of these trip and falls. Indeed, one of the disclosed incidents explains that the passenger tripped on a deck chair leg when walking on the pool deck. *See* ECF No [22-1] at 7. Given the lack of information about the cause of the trip, it is unclear to the Court why Plaintiff believes this is not substantially similar without any further information or investigation. And Plaintiff herself speculates on this point in stating: "*it appears* the passengers simply tripped over lounge chairs." *See* ECF No. [24] at 2 (emphasis added). Rather than investigate these disclosed incidents, Plaintiff seeks to compel Carnival to provide fleetwide discovery. That is not reasonable or proportional.

Further, Carnival has explained that because its ships in other classes differ in size, the amount of open space on the decks for lounge chairs also varies in size as does the configuration of the lounge chairs on the decks. *See* ECF No. [25] at 6-7. For this reason, there is no uniform design of lounge chair placement across the fleet, and the pool and deck supervisors have discretion to decide how to organize the lounge chairs and where to place them. *Id.* Thus, it would seem disproportional to require Carnival to provide this information given the potential differences in pool deck configuration and lounge chair organization among the different classes of ships, especially when Plaintiff has already received two prior incidents within the same class of ships.

Although Plaintiff directs the Court to various cases in which discovery has been expanded fleetwide, the Court finds these cases distinguishable or unpersuasive. The majority of the cases Plaintiff relies on do not involve a slip-and-fall incident or a trip-and-fall incident where the circumstances surrounding the fall, such as ship configuration, floor type, and location within the vessel are typically important factors in determining whether the incidents are substantially similar for purposes of notice. With the exception of two cases, Plaintiff relies on decisions involving sexual assaults on passengers, misdiagnosis of a medical condition, or an event occurring off the vessel during an excursion. *See K.T. v. Royal Caribbean Cruises, Ltd.*, Case No. 16-cv-25157-MOORE/McAliley (guest-on-guest sexual assault); *Doe v. Celebrity Cruises, Inc.*, Case No. 18-cv-20956-COOKE/Goodman (crew-on-guest sexual assault); *Blackmon v. Carnival Corp.*, Case No. 13-cv-20837-LENARD/O'Sullivan (guest-on-guest sexual assault); *Murphy v. Carnival Corp., et. al.*, Case No. 19-cv-21450-SCOLA/Torres (misdiagnosis of a cardiac event); *Sexton v. Carnival Corp., et. al.*, Case No. 20-cv-20990-SCOLA/Torres (misdiagnosis of respiratory conditions); *Sweeney v. Carnival Corp.*, 336 F.R.D. 387 (S.D. Fla. 2020) (failure to warn about the dangers inherent in taking an ATV excursion). And although Plaintiff directs the Court to two

other decisions involving a personal injury on a ship in which fleetwide discovery was ordered, neither the orders in those cases nor the Court's review of the dockets in those cases reveal any information as to the particular circumstances that led to such broad discovery. *See Cintron v. Carnival,* Case No. 23-cv-22020-SCOLA/Goodman (ordering discovery of prior incidents on a fleetwide basis in case involving a glass door shattering due to a wind tunnel effect); *Shamburger v. Carnival Corp.*, 2024 WL 81220 (S.D. Fla. 2024) (mentioning that the court previously ordered fleetwide discovery of prior incidents involving passenger slip and falls on diamond-plated gangways at a prior hearing).[4] Put simply, these decisions are not instructive or helpful to the issue of proportionality as it applies to the trip-and-fall case at issue here.

In support of its position that the Court should expand the scope to the entire fleet, Plaintiff cites to Carnival's Hess Procedures, specifically its written procedures for "prevention of slips, trips and falls in accommodation." *See* ECF No. [20-3]. Directing the Court to language stating, "[s]unbeds or sun loungers must be arranged on deck ensuring clear access to minimize trip and fall hazards," *id.* at 2, Plaintiff argues that, because this (very general) policy applies fleetwide, discovery in this case should extend fleetwide. Yet, the same document also refers to (very general) fleetwide procedures for slip-and-fall prevention, such as keeping "[o]pen decks" "clean and free from debris whenever possible" or making efforts "to keep interior floors dry as much as possible, especially in areas exposed to heavy traffic and food and drink consumption." *Id.* The Court does not see how the very general policy about arranging sunbeds to avoid trip and falls is any different than the very general policy about keeping floors dry and free of debris to avoid slip

---

[4] Plaintiff also directs the Court to *Bonell v. Carnival*, Case No. 13-cv-22265-WILLIAMS/Goodman and *Blackmon v. Carnival Corp.*, Case No. 13-cv-20837 to support her position on proportionality. As discussed above *Blackmon* is factually dissimilar as it involved allegations of sexual assault. In addition, both cases were decided prior to the 2015 amendment to Federal Rule of Civil Procedure 26(b)(1), which incorporated proportionality as part of the analysis. And based on the Court's review of the *Bonnell* opinion, it is unclear why the court ordered fleetwide discovery.

and falls. Both policies apply fleetwide; yet, courts in this District have routinely limited discovery for slip and falls involving a slippery substance or debris to sister-class ships under relevance and proportionality standards. The Court finds no reason to expand discovery for a trip-and-fall incident on a sunbed based on this broad policy statement. Such logic would extend discovery fleetwide for all slip-and-fall incidents where a plaintiff alleges the floor was slippery or covered in debris, which courts have, absent a special fact-specific circumstance, declined to do. Although the Court provided Plaintiff with ample opportunity to provide facts that warrant fleetwide discovery, both during oral argument and supplemental briefing, Plaintiff has failed to do so. *Hernandez*, 2023 WL 5747682 at *2 (finding no error in the magistrate judge's ruling limiting discovery to sister class ships when the plaintiff failed to provide any facts supporting a broader scope of discovery). Thus, the Court sees no reason to expand discovery to the entire fleet.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that Plaintiff's Motion to Compel Better Responses to Second Request for Production, **ECF No. [24]**, is **DENIED**.

**DONE and ORDERED** in Chambers in Miami, Florida on June 20, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record